TARA K. MCGRATH
United States Attorney
ERIC CHIANG
Assistant United States Attorney
California Bar No.: 323268
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9622
Fax: (619) 546-0510
eric.chiang@usdoj.gov
Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HUGO ALEJANDRO OLVERA NAJERA,<br><br>Defendant. | Case No.: 24-cr-00042-AGS<br><br>**UNITED STATES' SUPPLEMENTAL MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING PASSIVE MEMBERSHIP IN A FACEBOOK GROUP** |

The United States of America, by and through its counsel, Tara K. McGrath, United States Attorney, and Eric Chiang, Assistant United States Attorney, hereby files its Supplemental Motion in Limine to Exclude Evidence Regarding Passive Membership in a Facebook Group.

The United States Attorney's Office has performed its standard *Henthorn/Giglio* checks for all the Border Patrol witnesses it intends to call for its case-in-chief. Those checks revealed that none of the witnesses' employee files contained evidence of potential impeachment information of any kind. This included any potential concerns with associations with the "10-15" Facebook group that was a subject of the Ninth Circuit panel's memorandum disposition in *United States v. Bernal-Sanchez*, No. 21-50276, 2023

WL 7179469, at *1 (9th Cir. Nov. 1, 2023) (unpublished). Consistent with the declaration filed in the *Bernal-Sanchez* case, *see* Exhibit A, this signifies that Customs and Border Protection Office of Professional Responsibility ("CBP OPR"), has reviewed the "universe of material in its possession," and none of the Border Patrol witnesses anticipated to testify in this trial were identified as one of the 135 individuals investigated by CBP OPR who "posted, liked, shared, commented on, or otherwise interacted with any potentially derogatory posts." Exhibit A, Ulmer Declaration at ¶ 4; *see also id*. at ¶ 6 (discussing the United States Attorney's Office's *Henthorn*/*Giglio* process and stating that "[i]f CBP OPR does not identify an investigation associated with a given employee, that signifies that OPR has no record of any investigation of which that employee was the subject," including "the 135 individuals investigated in CBP OPR's 10-15 investigation").

In addition to the United States Attorney's Office's standard *Henthorn*/*Giglio* checks, the United States also discussed potential impeachment issues with the potential Border Patrol witnesses in person—including but not limited to online activity. Consistent with the agency *Henthorn*/*Giglio* checks, the inquiries revealed no matters of potential impeachment.

Out of an abundance of caution, on April 11, 2024, the United States disclosed to defense counsel that during pretrial witness meetings on April 10, 2024, three Border Patrol witnesses[1] disclosed that at some point in the past (in all cases years ago), they were members of the 10-15 Facebook group. One Border Patrol agent disclosed that he was in the group for only two weeks, and did not post, like, or comment on any posts during that two weeks. One Border Patrol agent disclosed that he was a member of the group but could not recall for how long, and did not post, like, or comment on any posts while he was a

---

[1] In its disclosure to defense counsel, the United States provided the names of the Border Patrol agents.

member. One Border Patrol agent disclosed that he could not recall whether or not he was ever a member of the group, but may have liked one post of neutral content.[2]

Given this very limited association and passive participation, the United States informed defense counsel that it did not believe these disclosures brought up any impeachment information. On April 11, 2024, defense counsel informed the United States that, at trial, he intended to question these Border Patrol agents on their past membership with the group.

As such, the United States moves to preclude the impeachment of the two Border Patrol agents it intends to call in its case-in-chief on their past membership under Federal Rule of Evidence 403. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. And relevant evidence may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The Ninth Circuit Model Jury Instructions properly instruct jurors "not [to] allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases." Ninth Circuit Model Jury Instruction 6.1 (Sept. 2022 ed.).

//
//
//
//
//
//
//
//
//
//
//

---

[2] At this time, the United States does not intend to call this witness in its case-in-chief.

3

Given the Border Patrol agents' very limited association and passive participation in the Facebook group, permitting defense counsel to question them on their past membership would have minimal probative impeachment value. This minimal probative value is substantially outweighed by acute dangers of irrelevance, unfair prejudice, confusing the issues, misleading the jury, and wasting time, due to the highly inflammatory nature of the group's activity that defense counsel's questioning could delve into. *See United States v. Tovar-Duran*, No. 19-MJ-24405-BLM-GPC, 2024 WL 1444994, at *1 (S.D. Cal. Apr. 3, 2024) ("'I'm 10-15' was a Facebook group for Border Patrol employees that prompted internal and congressional investigations due to its content: jokes about sexual assault and the death of migrants and the use of racist and misogynist memes and slurs.").

DATED: April 11, 2024

Respectfully submitted,

TARA K. MCGRATH
United States Attorney

*/s/ Eric Chiang*
ERIC CHIANG
Assistant United States Attorney

4

# EXHIBIT A

TARA K. MCGRATH
United States Attorney
COLIN M. MCDONALD
Assistant U.S. Attorney
California Bar No. 286561
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-9144
Colin.McDonald@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 20-mj-20169-AJB-JLB |
|---|---|
| Plaintiff, | DECLARATION OF BRANDON ULMER |
| v. | |
| JHOANTAN VILMAR BERNAL-SANCHEZ, | |
| Defendant. | |

I, Brandon Ulmer, declare as follows:

I have personal knowledge of the facts set forth herein, unless specifically stated based on information and belief.

1. I am currently the Director of the Investigative Systems Group for United States Customs and Border Protection (CBP) Office of Professional Responsibility (OPR). Prior to January 2024, I served as the Director of Operations Management for CBP OPR and had been so employed for approximately five years. In that capacity I supervised a team of Operations Managers that conducted case management for all OPR field offices. These

duties included the monitoring and consultation on all investigative operations, high profile investigations, and significant incidents.

2. In approximately July 2019, as part of my responsibilities for CBP OPR, I was assigned to assist with investigations arising from reports of derogatory postings in the Facebook group "I'm 10-15" and similar Facebook groups, including "I'm 10-15x2" (collectively referred to in my declaration as "10-15" or the "10-15 groups"). CBP OPR was the entity assigned to investigate the 10-15 groups; no other entity or agency within CBP or the Department of Homeland Security investigated the 10-15 groups.

3. To conduct the 10-15 investigation, CBP OPR obtained a limited data set of postings and activity from the 10-15 groups. To this day, CBP OPR does not have the full contents of the 10-15 groups; CBP OPR had no compulsory process available to obtain those contents from Facebook. CBP OPR built its universe of material from the 10-15 groups by downloading information contained in publicly available media reporting, and receiving specific posts and activity directly from witnesses or group participants. CBP OPR also captured limited information depicting 10-15 Facebook group posts between approximately May and July 2019. The posts were captured by way of a 45-minute video recorded by a 10-15 Facebook group member scrolling through content posted to the group.

4. To conduct the 10-15 investigation, CBP OPR reviewed the universe of material in its possession to identify any potentially derogatory content. Thereafter, CBP OPR identified all individual CBP employees who were associated with the potentially derogatory content. CBP OPR then opened investigations into any CBP employee who posted, liked, shared, commented on, or otherwise interacted with any potentially derogatory posts. In all, CBP OPR opened investigations into 135 identified

individuals. As of approximately June 2, 2020, all of the investigations have been completed. In other words, there have been no active 10-15 investigations since approximately June 2, 2020.

5. I am familiar with the names of every employee investigated in CBP OPR's 10-15 investigation. Border Patrol Agent Albert Monroy ("Agent Monroy") was not one of the employees investigated. In other words, CBP OPR does not possess any material demonstrating Agent Monroy posted, liked, shared, commented on, or otherwise interacted with any potentially derogatory posts in the 10-15 groups. Additionally, Agent Monroy was not identified by any interviews of other witnesses or subjects of other 10-15 investigations.

6. CBP OPR regularly responds to requests initiated by the U.S. Attorney's Office to fulfill the government's obligation to produce exculpatory material and impeachment information under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. As part of this process, CBP OPR receives the names of CBP employees identified as witnesses for individual criminal cases, and searches for any investigation of which any identified witness was a subject. CBP OPR reports the existence of any such investigation to CBP's Office of Chief Counsel (OCC), regardless of the findings or disposition of the investigation. If CBP OPR does not identify an investigation associated with a given employee, that signifies that OPR has no record of any investigation of which that employee was the subject. This same process applies to all of the 135 individuals investigated in CBP OPR's 10-15 investigation.

7. At the request of the U.S. Attorney's Office for the Southern District of California, CBP OPR searched its universe of material in its 10-15 investigation, including non-derogatory material, and confirmed that Agent

Monroy's name does not appear in that universe of material. In other words, nothing in CBP OPR's possession indicates that Agent Monroy ever posted, liked, shared, commented, or otherwise engaged with any content in any 10-15 group, including "10-15x2."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 30 day of January, 2024.

Brandon Ulmer